Brooke, J.
This is a case of great interest as regards the commonwealth and individual stockholders in the James river and Kanawha company, and on principle is deeply interesting to every citizen of the state. That it is the province of the judiciary to decide on the constitutionality of the laws, cannot now be doubted. That the bill of rights is the basis of the constitution, is a proposition sustained by the authority of the judiciary and of the legislature. In the case of Custis v. Lane, 3 Munf. 590. judge Roane, speaking for the court, said, “The declaration of rights is stated to have been made by the representatives of the good people of Virginia, and it is declared that these rights do pertain to them and their posterity, as the basis and foundation of government.” And we have the legislative construction of the bill of rights, in the act of the 24th January 1799, 1 Rev. Code, ch. 32. a. p. 78. to repeal certain acts and to declare the construction of the bill of rights on the subject of religion; thereby acknowledging its authority as a part of the constitution. The first article of the new constitution acknowledges the bill of rights as the basis and foundation of government, requiring, in the opinion of the convention, no amendment. That it has been repeatedly referred to as the *151 rule of judicial decision, see The Case of the County Levy, 5 Call 139. and Currie’s adm’rs v. Mutual Assurance Society, 4 Hen. & Munf. 315. Nor is its authority impaired by the few modifications of it to be found in the former and last constitutions. And although a clause in the new constitution subjects the judges to removal from office by a vote of two thirds of the general assembly, without cause, if it shall so please the general assembly, whereby the independence of the judges is greatly impaired, yet it is still their duty to decide on the constitutionality of the laws passed by the legislature. In the discharge of this office, I know that this court will not be influenced by any other considerations than those of duty: and it is therefore with great deference that I differ from a majority of the judges. It must be admitted that at the institution of civil government founded on the rights of all, the will of the majority must prevail over the opinions and interests of the minority: but when such government is established, its great object is to protect the rights of the minority from the tyranny of the majority; a tyranny more inflexible and implacable than the tyranny of a single despot. In the one case the majority feels no sympathy for the minority. In the other case the sufferers have the sympathy of the majority of their fellow subjects, and the force of public opinion may redress their wrongs. To effect this relief against the tyranny of majorities, written constitutions were devised by the american people. So also, where a corporation is to be created, the majority of the community to be incorporated must decide on the acceptance of the charter; otherwise the smallest minority would defeat the will of the largest majority. When the charter is accepted, the minority are bound by all its regulations, and protected by those which limit the power of the majority; and to give effect to this protection, the minority are not bound by regulations not within the provisions of the charter, and in the case of an abuse of *152 power by the majority, the courts decide between the corporation and the party injured. This is the case before us. The property of the appellant has been taken by the authority of the common council of the corporation; and the inquiry is, first, whether the tax imposed on the. appellant was authorized by the charter, or, if not by the charter, by the two laws authorizing the subscription of two sums amounting to 650,000 dollars by the corporation to the James river and Kanawha company. It must be admitted, I think, that the charter did not confer the power in question, or no application would have been made to the legislature to pass the laws authorizing the subscription. Those applications were made to the legislature by a majority of the property holders in the city; and it is said that the majority had a right to control the minority. I admit, as before remarked, that the majority may accept a charter, and may also surrender a charter, or refuse an amendment to it. But the trae question is, did this power of the majority extend to the case before us ? If so, the minority, by becoming members of the corporation, are no longer within the protection of the bill of rights, unless it can be shewn that the laws in question were authorized by the bill of rights and the constitution. As it is not contended that the power to impose the tax was given by the charter of the corporation, let us test the authority of the laws passed to give the power,, by supposing a majority of the people of any of the counties or districts of the state to make application to the legislature for a law imposing a tax on that portion of the people of the state, to be applied to public purposes and not local: would such a law be constitutional ? I think not. Nor would some portion of interest in the object of the tax make it so. Otherwise .the state, by the means of local majorities, might practise the most oppressive tyranny upon local minorities. It would violate the 6th article of the bill of rights, by taking pri *153 vate property for public purposes without compensation. It would violate natural justice, and be in conflict with the theory and the principles of the constitution. It would violate the 15th article of the bill of rights, which declares that no free government or the blessings of liberty can be preserved lo any people, but by a firm adherence to justice, moderation and temperance, and by a frequent recurrence to fundamental principles. That the legislature may delegate its power to any of the local authorities established by the constitution or the laws, there can be no doubt: but this delegated authority must be for local purposes, and not a public purpose. On this point I refer to judge Pendleton's opinion in The Case of the County Levy, 5 Call 139. And all the laws referred to by the counsel are of this character. But if it were not so, and some of those laws went further, still, when a question is made as to the constitutionality of a law, it is not to be decided by the repeated acts of the legislature on which no question has been raised and adjudged, but by the bill of rights and the constitution. That a corporation may accept an amendment to its charter at the will of a majority of the corporators, is readily admitted. But the amendment ought to be by a law not temporary and for a single object in which a majority may have an imposing interest for the time; it ought to be by a law organic in its character and permanent in its operation, and providing for a common interest: and that, I think, is not the character of the laws in question. They were intended to effect a particular object, temporary only, in which there could not be a common interest. That the inhabitants might derive some benefit remote in prospect, though the object was a public object, is no answer to the objection. This benefit cannot be pretended to be the object of the laws. The improvement of the James and Kanawha rivers was a great state adventure, begun many years before, during which the corporation had *154 never been called on to contribute more than the rest of the state; while the state itself had contributed more than a million of dollars of the public money, not for the benefit of Richmond only, but for the benefit of all the people of the commonwealth, and especially of those who lived in the region of the improvement and along its line. It is absurd to say that a great national objeot like this was a local object as regarded Richmond. If so, other local interests in the region of the improvement ought to have been called on, as well as the minority in the city of Richmond.
Taking this view of the twokws in question, I shall not say any thing on the law authorizing the subscription by the banlcof Virginia, with the consent of a majority of the stockholders of the bank. I think the decree dissolving the injunction ought to be reversed, and the injunction perpetuated.
Tucker, P.
The power of the judiciary to decide on the constitutionality of a law is too firmly settled to be now questioned. It is equally clear to my mind that if the legislature have power to act, the judiciary cannot control the manner of its exercise.
In this case it is contended that the legislature had no constitutional power to authorize the subscription by the corporation to the James river and Kanawha company. Yet it is admitted that the legislature has the power of incorporating a town with certain corporate powers, and it cannot be denied that this power may be exercised without the unanimous consent of the inhabitants. It would annihilate the power, if the fiat of one man or ten men could arrest its exercise. Some number, then, less than the whole must suffice to render valid the acceptance of the act of incorporation. And if a number less than the whole will suffice, who is to decide upon the plus or minus f Certainly not the judiciary; andas certainly it must fall within the legislative province. *155 But the legislature has declared the assent of a majority sufficient. We must therefore take it that an original charter accepted by a majority of the inhabitants is valid; and pari ratione, a charter giving new powers and privileges at the instance of a majority, or accepted by them, is also valid. These principles are more than sustained by the english cases; for even a charter of the crown is valid if accepted by a majority, and a legislative or statutory charter is binding without any consent whatever.
But it is said, the grant of new powers must be of such as are corporate in their character. Be it so. But who is to decide that question, and by what is it to be tested ?
It has been argued that corporate powers must be confined to the limits of the corporation. This I think a most imperfect test; for, confessedly, the limits of the corporation may be extended, so that, by this mode of reasoning, you extend the power by extending the boundaries of the city. Moreover, it is not denied that a corporation may bring water into the city from a point beyond it; and it may erect its works for that purpose without its own jurisdiction. This affords us a better test. The interest of the corporation is the true test of the corporate character of the act: for every by-law, says lord Holt, by which the benefit of the corporation is advanced, is good for that reason. Thus in the case of the water works, though the source be ten miles off, the act for introducing the water is fairly a corporate act, because the want is experienced in the heart and through all the wards of the corporation, and the benefit is experienced within the limits, though the operations by which it is introduced are carried on without. So too, the removal of the bar in James river above Warwick would be fairly a corporate act, since it would greatly redound to the advantage of Richmond, would benefit its trade, and diminish the charges which now *156 encumber and embarrass it. For though the work would be done beyond the limits of the city, the consequences or effects of it would be felt throughout its borders.
If then the test of the corporate character of an act is the probable benefit of it to the community within the corporation, who is the proper judge whether a proposed measure is likely to conduce to the public interest of the city ? Is it this court, whose avocations little fit it for such enquiries? Or is it the mass of the people themselves, — the majority of the corporation, acting (as they must do if they act at all) under the sanction of the legislative body ? The latter, assuredly. The principles of good sense, not less than those of our institutions, inculcate the general propriety of leaving to individuals and to communities the right to judge for themselves what their interest demands, instead of fettering and controlling them, under the false notion that we the governors know what is good for them better than themselves. Without, therefore, entering into the enquiry whether the subscription was for their benefit or notj I am of opinion that they were the proper judges, subject nevertheless to that control which necessarily exists in the charter-granting power.
I come next to the law authorizing the subscription by the bank. From what has been already said, it is clear that if the subscription be germane to the business of the bank, and was so deemed by a majority of the stockholders, the authority to subscribe was valid. Now the bank is an institution whose object is to make gain by dealing in money. It trades in notes, bonds, bills and other securities for money, and unless restrained by charter, it deals in stocks of other companies of whatever description. In the subscription to a newly organized company, it in fact advances its money on the faith of the company itself, and relies for profit and reimbursement on its probable prosperity and success. The scrip which it receives is the obligation of *157 the company, as completely as if the money had been formally loaned and a negotiable note taken for the amount; and so perfectly was this sort of dealing understood to be within the ordinary current of banking transactions, that the legislature, who did not choose to engage in stockjobbing, expressly provided that the bank should engage in the purchase of no stock but its own. This is a legislative exposition (as far as that can have any weight) of the intimate connexion subsisting between the business of banking and the purchase of stocks. And this legislative inhibition was removed at the instance or with the assent of a majority of the stockholders of the bank, and the institution was thus left free to act as if the restriction never had been imposed. For my own part, I can see no employment of bank capital that is more germane to its business, than the purchase of stocks.
These two points being settled, I do not find it necessary to touch upon the various minor topics that were most ably discussed by the counsel for the appellant. They all resulted in the attempt to shew that under the circumstances developed in the course of legislation upon this subject, both the bank and the corporation had a right to withdraw; as also a variety of private individuals who are supposed to have been equally wronged. Be it so. But none of them have asked to be absolved. All are paying up, and harmoniously proceeding with the business of the company. If they who have been wronged make no complaint, can the plaintiff assert their rights, to their prejudice and against their will ? And even if we were unreasonably to decide that the whole charter was void because of one unconstitutional provision, shall we so decide when he who is injured eschews such a decision ? The corporation might have withdrawn. It may have been unconstitutional not to provide that it might do so. But it has acquiesced : it has paid 20,000 dollars. If it withdraws, it dissolves *158 the charter and may lose its advance. It therefore declines to withdraw. Shall a mere integer in the corporation compel a dissolution of the company, against the will of the Corporation ? I think not. I am therefore of opinion to affirm the decree.